N. Y. 1, 26 N. E. 905.    The grade of the co-servant directing the work does not have any bearing in the determination of this question. Loughlin v. State, 105 N. Y. 159, 11 N. E. 371; Connolly v. Maurer, 6 Misc. Rep. 98, 26 N. Y. Supp. 18; Hussey v. Coger, 112 N. Y. 614, 20 N. E. 556.    It is the nature of the work done, the character of the act, which constitutes the test, not the man who does it.    The plaintiff's intestate knew he was in a hazardous business.    The particular danger apparent to every one was the liability to come in contact with undischarged dynamite.    This danger was unavoidable, and he and the foreman were alike ignorant of where these cartridges were lying. This risk was an incident to the business assumed by him.    Crown v. Orr, 140 N. Y. 450, 35 N. E. 648; Mancuso v. Construction Co., 87 Hun, 519, 34 N. Y. Supp. 273; Huda v. Glucose Co., 154 N. Y. 474, 481, 48 N. E. 897.    The master fulfilled his duty to his workmen when he furnished adequate appliances, competent foremen, and a place in its natural state safe for the men.    After that, the details of the enterprise must of necessity be developed by the men themselves; and, if there was any negligence, it was that of a co-servant, and not chargeable to the master.    The position taken by the trial court, that it was for the jury to pass upon the sufficiency of the inspection made by Leonard, is untenable—First, if such inspection was carelessly made, that carelessness cannot be imputed to the defendant; and second, the evidence does not show that the most circumspect examination would have revealed these undischarged cartridges, covered up as they were.

A new trial is ordered, with costs to abide the event.

---

(41 App. Div. 78.)

THOMPSON v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department.    May 24, 1899.)

RAILROADS—BRIDGING DITCHES—INJURIES TO PEDESTRIAN—NEGLIGENCE.

A railroad company had a ditch on the side of its track, which was covered by a culvert over which there was a highway and a way for pedestrians. The six feet intervening between the railroad track and the culvert was unfenced on the sides. Plaintiff, on a dark night, while walking in a careful manner, with knowledge of the ditch and its surroundings, and attempting, while crossing the tracks, to take such course as would lead her to the sidewalk crossing the ditch, went a little too far to one side, there being no light or well-defined path to guide her, and fell into the ditch where unguarded. Held, that the questions of negligence and contributory negligence were for the jury.

Appeal from trial term, Orleans county.

Action by Jane Thompson against the New York Central & Hudson River Railroad Company.    From a judgment for plaintiff and from an order denying a new trial, defendant appeals.    Affirmed.

The action was commenced on the 8th day of March, 1898, to recover damages for injuries sustained by the plaintiff on the 12th day of November, 1897, by falling into a ditch constructed and maintained by the defendant upon its premises in the village of Lyndonville, N. Y., and which injuries, it is alleged, resulted through the negligence of the defendant. The defendant controls and operates a railroad which extends east and west through the village of Lyndonville, in the county of Orleans. The southerly track is known as the

"main track," and another, on the north side of it, which extends parallel with, and the ordinary distance from, the main track, is known as the "siding." South of the main track, and upon the property and right of way of the defendant, there is a ditch extending for a considerable distance, varying from 8 to 10 feet in depth, being from 15 to 20 feet broad at the top, the sides being steep or abrupt. Crossing this ditch and the two tracks of the defendant at right angles is the main street or highway in the village of Lyndonville. The surface of defendant's roadbed, of the highway, and the premises adjacent is all substantially level. The village, which numbers about 500 inhabitants, lies to the south of defendant's tracks. Leading from the village northerly, the highway crosses defendant's tracks and the ditch, there being a driveway for teams in the center of the usual width, and a plank sidewalk on each side of the highway. The ditch is carried under the highway and sidewalk by a stone culvert, which extends the full width of the highway. The sidewalk upon the easterly side of the highway extends to within six feet of the southerly rail of defendant's track, and to the northerly bank of the ditch. From that point, leading north, there is no regular sidewalk, and pedestrians cross the defendant's tracks upon a more or less irregular cinder path, which extends northerly of defendant's tracks. The evidence tends to indicate that from defendant's tracks, and on the northerly bank of the ditch, there is no well-defined walk, except such as is made by tramping upon the cinders or ground beyond. Commencing some distance southerly of defendant's tracks, and immediately east of the sidewalk, there was a fence extending across the ditch in question, and to a point about six feet from defendant's track, and this fence, at the sidewalk crossing the ditch, made a barrier or guard, which would prevent people while upon the sidewalk from falling into the ditch. This fence, guard, or barrier stopped at precisely the same point that the sidewalk stopped, and, as before said, within about six feet of the southerly rail of defendant's main track. The evidence tends to indicate that such fence extended as near to defendant's track as was proper, having in view the safe operation of its trains at that point. The situation, as above described, had continued substantially the same from the year 1876. The plaintiff, on the 12th day of November, 1897, had been at work in a factory located northerly of defendant's tracks and property, and easterly of the highway in question. About 6 o'clock on the evening of that day, she, with two other employés, left the factory to go to their respective homes, which necessitated their crossing the tracks and property of the defendant. The evidence tends to show that at the time they left the factory it was very dark,—so dark, as some of the witnesses expressed it, "you could not see your hand before your face." The plaintiff made her way westerly towards the highway. She states that there was nothing to indicate whether she was upon the beaten path or otherwise, except the knowledge that she was not walking upon the grass, but rather upon cinders. She also states that at the time the wind was blowing very hard; that when she reached the railroad track of the defendant she did her best to take such course as would lead her to the walk which approached the southerly track of the defendant from the south, and across the ditch in question, but that while doing her best in that regard she went a little too far to the east,—went on the east side of the guard,—and fell into the ditch just east of the sidewalk; in other words, that she stepped on the wrong side of the barrier leading across the ditch. In so falling, she sustained the injuries complained of, which are not the subject of very much dispute. The plaintiff had lived in the village of Lyndonville all her lifetime, had crossed the defendant's property upon the sidewalk many times, and was entirely familiar with the situation as it existed at the time. The contention of the plaintiff is that the defendant was guilty of negligence in permitting the ditch upon its property to so remain that the plaintiff, under the circumstances disclosed by the evidence, should have fallen into the same. The defendant contends that, in the exercise of ordinary care and prudence, it did all that it was required to do to protect the traveling public and the plaintiff against injury from the structure which it had made and maintained.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, and SPRING, JJ.

Charles A. Pooley, for appellant.
S. E. Filkins, for respondent.

McLENNAN, J.　The rule of law applicable to the facts in this case is well settled.　In the case of Beck v. Carter, 68 N. Y. 283, the headnote is as follows:

"If the owner of land make an excavation thereon adjacent to the highway, or so near as to make the use of the highway unsafe or dangerous, he will be liable to a traveler who, while using ordinary care, falls into it and is injured."

In that case the court had charged the jury as follows:

"It makes no difference whether the excavation was seven, nine, or ten feet from the originally established boundaries of the thoroughfare.　If it was so situate that a person lawfully using the thoroughfare, and in a reasonable manner, was liable to fall into it, the defendant was liable."

The court of appeals held that such charge was proper.
In Shear. & R. Neg. §§ 390, 391, it is said:

"It is gross negligence to construct a passageway along a precipice, without having sufficient guards for the protection of travelers."

Whart. Neg. § 974, says:

"The true test as to negligence in fencing roads is whether there is such danger of a traveler, using ordinary care in passing along a street, being thrown or falling into the dangerous way, that a railing is requisite to make the place safe and convenient."

The case of Morrell v. Peck, 88 N. Y. 398, was an action brought to recover for injuries sustained by the plaintiff, because a bridge upon which he was traveling at the time of the accident was without guards or railing, and had been knowingly and negligently left so by defendant.　The plaintiff, who was walking in the traveled track of the highway in the evening, encountered a loaded team on the bridge, stepped aside to allow it to pass, and in so doing, without negligence on his part, fell over the unprotected side of the bridge and was injured.　The verdict for the plaintiff was sustained.

The case of Maxim v. Town of Champion, 50 Hun, 88, 4 N. Y. Supp. 515, was an action brought against the town of Champion to recover damages for injuries sustained by the plaintiff by falling over an embankment to a bridge which was not guarded.　It was held that it was a question for the jury, under all the circumstances disclosed by the evidence in that case, to determine whether the defendant was guilty of negligence in permitting the embankment to remain unguarded; and this, notwithstanding it had been in the same condition for a period of 68 years.　The case was affirmed in 119 N. Y. 626, 23 N. E. 1144.

If there had been no guard upon the sidewalk leading across the ditch in question, and the plaintiff, while upon such sidewalk, and while exercising ordinary care and prudence, had stepped a little to one side, or had been blown by the wind a little to the east, and had fallen into the ditch, there could be no question as to her right of recovery.　The circumstance that the ditch was left unguarded at the point where the sidewalk terminated, rather than opposite the sidewalk itself, cannot be of importance.

If the evidence of the plaintiff is to be believed, she was proceeding along the public highway leading to her home in the most careful and prudent manner. She was attempting, as best she could, while crossing the defendant's two tracks and the six feet between the southerly track and the ditch, to take such course as would lead her to the sidewalk crossing the ditch. While so proceeding in the darkness, she went a little too far to the east, there being no light, no walk, or well-defined path to guide her, and came to the ditch, which at that point was wholly unguarded, fell into it, and received the injuries of which she complained. So far as the plaintiff was concerned, the guard across the ditch along the sidewalk was of no use to her. The accident occurred, and the injury was done, before she reached such sidewalk. Upon all the evidence in this case, it was for the jury to say whether or not defendant was guilty of negligence in constructing and maintaining a ditch of the character of the one in question, in such close proximity to the highway that a traveler, by making a single misstep when attempting to cross such ditch, should have fallen into it. It was also a question of fact for the jury to determine whether or not, under the circumstances, the plaintiff was guilty of contributory negligence. Both questions were submitted fairly and impartially by the learned trial justice to the jury, and, the jury having found adversely to the defendant, no reason is apparent why such finding should be disturbed. None of the exceptions to the reception or rejection of evidence, or to the charge of the learned trial justice, taken by the defendant, call for reversal of the judgment or order appealed from. The judgment and order appealed from should be affirmed, with costs.

Judgment and order affirmed, with costs. All concur.