## (November 6, 1972)

■ CLARENCE CONKLIN, as Guardian ad Litem of JOHN CONKLIN, an Infant, et al., Plaintiffs, v. CITY OF YONKERS et al., Defendants; BELLINO BROS. CONSTRUCTION Co., INC., Appellant, and SILBERBLATT AND COMPANY, Respondent.— Memorandum: This negligence action to recover damages for personal injuries, etc., was settled so far as plaintiff's causes are concerned for $3,000, to be paid only by defendant S. S. Silberblatt, Inc. (sued as Silberblatt and Company), subject to a stipulation that the issues raised by said defendant's

cross complaint against defendant Bellino Bros. Construction Co., Inc., be determined by the trial court upon agreed facts. The appeal is by the latter defendant from a judgment of the Supreme Court, Westchester County, entered November 11, 1971, against it and in favor of the former defendant for said sum of $3,000, plus costs, upon the trial court's decision. The judgment should be affirmed, with costs. No opinion. Gulotta, J. (dissenting). This is an action to recover for personal injuries sustained by the infant plaintiff when he fell into an excavation on the property of defendant Municipal Housing Authority for the City of Yonkers. Defendant S. S. Silberblatt, Inc., sued herein as Silberblatt and Company, was the general contractor engaged by the Authority to construct certain houses. Defendant Bellino Bros. Construction Co., Inc., subcontracted with Silberblatt to perform all the excavation work on the project. The gravamen of the complaint was the negligence of these latter two defendants in excavating and in failing to guard the hole thus created with suitable barricades and lighting. The Authority was charged with actual knowledge of the condition. The Authority and Silberblatt served a joint answer which, *inter alia,* asserted a cross complaint against Bellino containing two causes of action. The first was interposed on behalf of both the Authority and Silberblatt on the theory of common-law indemnity. The second cause of action was interposed only by Silberblatt, based solely upon a contractual provision for indemnity contained in the subcontract. Bellino cross-claimed against Silberblatt for common-law indemnity. At the trial the action was settled with the primary plaintiffs upon payment of a sum of money by Silberblatt. All the causes of action asserted in the main and cross complaints were discontinued, with prejudice, except the cause of action asserted by Silberblatt against Bellino for contractual indemnity. Silberblatt and Bellino stipulated that the full force and effect of the indemnity clause would be determined by the trial court as a matter of law. The agreement designates Silberblatt and Bellino as first and second parties, respectively, and contains the following provision for indemnification: " The second party shall hold the first party harmless from all liability, loss, cost or damage from claims for injuries or death from any cause, while on or near the project, of its employees or the employees of its subcontractors, or by reason of claims of any person or persons for injuries to person or property, *from any cause occasioned in whole or in part by any act or omission of the second party,* its representatives, employees, subcontractors or suppliers and whether or not it is contended the first party contributed thereto in whole or in part, or was responsible therefor by reason of non-delegable duty" (italics supplied). The parties further stipulated (1) that the court need not inquire as to the merits of the occurrence, (2) that the accident occurred in and about the construction site and (3) that the accident occurred during the suspension of work on a weekend, but while Bellino was still engaged in the performance of its excavation contract. At the outset, we note that the indemnification clause in the case at bar is substantially different from the clauses involved in *Levine* v. *Shell Oil Co.* (28 N Y 2d 205) and *Kurek* v. *Port Chester Housing Auth.* (18 N Y 2d 450), cited by the respondent. In *Levine* (p. 210) the indemnitor was required to pay " ' any and all claims * * * caused by or happening in connection with the premises ' ". In *Kurek* (p. 456), the indemnitor agreed to " ' hold the [indemnitee] * * * harmless against all claims and demands * * * of whatsoever kind or nature, which may arise in connection with * * * this Contract ' " (see, also, *Redding* v. *Gulf Oil Corp.*, 38 A D 2d 850). In the foregoing cases, the indemnitor was virtually an insurer for any loss suffered by the indemnitee arising out of the performance of the contract between them.

In the case at bar, we read the indemnification clause as composed of three basic sections. The first two cover injuries to distinctly separate classes of persons and impose a different duty to indemnify, depending upon the class to which the injured person belongs. The import of the third section is that liability for indemnity under the first two shall be without regard to certain additional factors hereinafter discussed. A careful reading reveals that in the first section Bellino agreed that if Silberblatt is cast in damages by reason of claims brought by any of the employees of Bellino or its subcontractors, for injuries or death " from any cause, while on or near the project," then Bellino will be required to indemnify absolutely and without regard to a showing of fault on its part. This first section has the same practical effect as the clauses in *Levine* and *Kurek* (*supra*). In the second section of the clause Bellino agreed to indemnify Silberblatt " by reason of claims of any person or persons for injuries to person or property, from any cause occasioned in whole or in part by any act or omission" of Bellino. The words " person or persons" must be read to mean any person or persons other than the employees of Bellino or of one of Bellino's subcontractors, for to read the clause otherwise is to render it meaningless. Where the injury is sustained by this class of persons, Bellino is required to indemnify only if it is first shown that the injury was proximately caused by some fault on its part. It appears uncontroverted that the infant plaintiff was a member of the class of persons covered under this second section of the indemnification clause. The third and final section of the clause provides, in part, that Bellino shall be required to indemnify for injury or damage under the first two sections " whether or not it is contended * * * [that Silberblatt] contributed thereto in whole or in part". Basically, this is a contract to indemnify Silberblatt against its own active negligence and. is not invalid since that appears to have been the unmistakable intent of the parties (*Levine* v. *Shell Oil Co.*, 28 N Y 2d 205, 212, *supra*). The third section concludes with a provision which we construe to mean that Bellino will be required to respond in indemnity under the first two sections without regard to whether Silberblatt " was responsible * * * [for the injury or damage] by reason of nondelegable duty". It is our opinion that this third section is intended to apply to both of the foregoing sections and is not an exception to the requirement that fault must be shown before Bellino will be required to indemnify for injuries to third persons. In other words, if Silberblatt is cast in damages by reason of breach of a nondelegable duty which it owed to the class of persons covered under the second section, then fault on Bellino's part must still be shown before indemnity will be required. With this in mind, we now turn to the question of whether the record before us would support a finding that the infant plaintiff's injuries were caused by some fault upon the part of Bellino. The Trial Term held: " The terms of the stipulation establish that the third party defendant, Bellino Bros., was actually engaged in the performance of work at the site and the Court, as it must, draws an inference that those circumstances which set in motion the original occurrence were ' occasioned in whole or in part by any act or omission of the second party'." We disagree. The cause of the infant plaintiff's fall is unknown because the parties stipulated that the court need not inquire as to the " merits of the occurrence." All we can glean from the stipulation is that the infant plaintiff fell " in or about" the construction site. The prime complaint alleges that the infant plaintiff was walking on the construction site when the accident occurred and the plaintiffs' bill of particulars states that the child was " playing" with other individuals on the property. The mere fact that Bellino was actually engaged in work at the site is insufficient to support the inference that the

accident was occasioned in whole or in part by any act or omission on its part. Within the circumstances of this case, we can perceive only three theories upon which Bellino might possibly be held liable. First, one who creates or maintains an excavation or other artificial condition so near a public way that he should foresee that it involves an unreasonable risk to users of that way who, without intending to leave it, may deviate therefrom is under a duty to use care to prevent injury to users of the way (see *Hayes* v. *Malkan,* 26 N Y 2d 295, 299; *Lacanfora* v. *Goldapel,* 37 A D 2d 721; 2 Harper & James, Law of Torts, § 27.4; Restatement, 2d, Torts, §§ 368–369; 46 N. Y. Jur., Premises Liability, § 91). This duty can be met by the erection of barricades and suitable lighting (cf. *Bolsenbroek* v. *Tully & Di Napoli,* 12 A D 2d 376). In the case at bar we are left completely in the dark as to the proximity of the excavation to the public way and as to whether the area was fenced and properly illuminated. This theory is all the more difficult to apply since all that is contemplated is that the excavation be "so close to the public thoroughfare that a traveler is injured by a slight and inadvertent deviation" (*Kelly* v. *Sabin Estates,* 279 App. Div. 348, 349; *Beck* v. *Carter,* 68 N. Y. 283). The infant plaintiff admitted in his bill of particulars that the accident occurred while he was playing on the property. Second, if the infant plaintiff was a trespasser and not merely one who strayed from the highway, Bellino would be liable only if the evidence established that it created a dangerous condition, that it had knowledge that children were in the habit of coming to the premises and that it failed to exercise reasonable care to prevent them from coming into contact with the excavation (see *Beauchamp* v. *New York City Housing Auth.,* 12 N Y 2d 400). Here again, the record is barren and we can only speculate as to whether proof of the foregoing would have been forthcoming had there been a trial. Certainly, the stipulation fails to indicate that Bellino had actual knowledge that children were in the habit of playing on the premises. The third possible theory upon which liability could be predicated is the breach of a nondelegable duty. The nondelegable duty of which the indemnification clause speaks is contained in subdivision 6 of section 241 of the Labor Law. That subdivision imposes a duty on all contractors, owners and their agents to properly guard, operate and arrange excavation sites so as to provide reasonable and adequate safety and protection "to the persons employed therein or lawfully frequenting such places." This theory must also fail by reason of the insufficiency of the stipulated facts. There is a substantial question as to whether the infant plaintiff was "lawfully frequenting" the construction site when the accident took place and thus whether he was within the class of persons to whom the nondelegable duty ran. Finally, we note that under the terms of the general contract the duty to provide a fence around the entire construction site was on Silberblatt. The subcontract with Bellino was for excavation work only and made no mention of fencing. Thus it appears that it was Silberblatt who exercised sole dominion and control over the positioning and maintenance of the fence required by the general contract. If such be the case, and the accident was indeed caused by the failure to fence, it would be a travesty of justice to require Bellino to indemnify Silberblatt because of the latter's neglect of duty when Bellino had no right to put up a fence on its own. In our opinion the stipulated facts are insufficient to sustain any of the possible theories upon which indemnity might be required and therefore the judgment appealed from should be reversed and the cross complaint of Silberblatt against Bellino for contractual indemnity should be dismissed.

Munder, Acting P. J., Latham and Christ, JJ., concur in memorandum. Judgment affirmed, with costs. Gulotta, J., dissents and votes to reverse and to dis-

miss the cross complaint of defendant S. S. Silberblatt, Inc., against defendant Bellino Bros. Construction Co., Inc., with an opinion, in which Benjamin, J., concurs.